IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**WILLIAM W. J. VAN LEEUWEN**                                                                    **PLAINTIFF**

**V.**                                          **CASE NO. 3:20-CV-03027**

**SHERIFF TIM ROBERSON;**
**CPL. CAMERON PAGE;**
**CPL. SCOTT HORNADAY;**
**SGT. RICHARD PEMBERTON; and**
**DEPUTY CHAD COLE**                                                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff William W.J. van Leeuwen's and Defendants Sheriff Tim Roberson, Corporal Cameron Page, Corporal Scott Hornaday, Sergeant Richard Pemberton, and Deputy Chad Cole's cross-Motions for Summary Judgment. (Docs. 31 & 41).[1] For the reasons given below, Mr. van Leeuwen's Motion is **DENIED**, Defendants' Motion is **GRANTED**, and the Amended Complaint is **DISMISSED WITH PREJUDICE**.

### I.   BACKGROUND

Mr. van Leeuwen and his wife, Ana, live on the county line that separates Boone County and Marion County; in fact, though Mr. van Leeuwen's house is in Marion County,

---

[1] The documents considered by the Court include: Plaintiff's Motion for Summary Judgment (Doc. 31); Plaintiff's Supporting Brief (Doc. 32); Defendants' Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Doc. 40); Defendants' Brief in Support (Doc. 41); Defendants' Statement of Indisputable Material Facts (Doc. 42); and Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 45). In responding to Defendants' Motion, Mr. van Leeuwen appeared to request dismissal of his case pursuant to Federal Rule of Civil Procedure 41. *See* Doc. 45, p. 10 ("Plaintiff apologizes to the court for the failure to file a proper case and realizes he is totally outmatched by the defense counsel and has to request the court to dismiss this case."). However, when the Court contacted Mr. van Leeuwen by email to verify that he was seeking a voluntary dismissal, his response indicated a desire to continue with the present litigation and not dismiss his case. *See* Ex. 1 (email exchange).

1

the start of his driveway and his mailbox are in Boone County.  *See* Doc. 32-1, p. 1.   Prior to the incident at issue in this lawsuit, the van Leeuwens contacted the Boone County Sheriff's Department three separate times regarding alleged complaints and disturbances around their home; and since this incident—even as recently as June 6, 2020—they have called the Boone County Sheriff's Department more than a dozen times.  (Doc. 42-3).

On or about January 28, 2018, Mr. and Mrs. van Leeuwen engaged in an altercation that left Mrs. van Leeuwen injured.  Without her husband's knowledge, she drove herself to a hospital in Boone County for treatment.  The Marion County Sheriff's Department was contacted about her injury, and that department referred the case to the Boone County Sheriff's Department because Mrs. van Leeuwen wished to meet with officers at the Everton Community Building in Boone County.  Corporal Page, Corporal Hornaday, and Sergeant Pemberton, all officers with the Boone County Police Department, were dispatched to meet with Mrs. van Leeuwen at the community building, where Mrs. van Leeuwen, with her arm in a sling, informed them that her husband pushed her off their bed and caused her injuries.

Defendants have bodycam footage of this meeting, and they have provided that footage to the Court.  *See* Doc. 42-7.  Having reviewed the footage, the Court confirms that Mrs. van Leeuwen made the following statements to the officers about the altercation with her husband:

- "He pushed me. I think he was throwing me—I don't know—and I hurt my shoulder."

- "I leave because I afraid, and I go the hospital because my shoulder hurt me too much and I'm traumatized."[2]

---

[2] Mrs. van Leeuwen is not a native English speaker.

- "He pushed me off the bed. Another time he start to play games and gave me bruises over there [indicating off camera to officer's body] when he was smaller, but right now he is more bigger—I don't know."

*Id.* Mrs. van Leeuwen also informed officers that her husband did not know where she was or that she had gone to the hospital. *Id.* The officers then informed her that they had probable cause to arrest her husband, to which she replied, "Oh, my God—but he never go to the jail. He going to be mad at me!" *Id.* After the officers assured her that Mr. van Leeuwen could not hurt her, Mrs. van Leeuwen offered to lead them to her house. *Id.* Officers arrived at the home and questioned Mr. van Leeuwen about the cause of his wife's injuries.

Mr. van Leeuwen disputed his wife's story and claimed that she fell off the bed after violently attacking him and that he had tried to catch her before she fell and injured her shoulder. (Doc. 45, p. 6). However, the police noted no visible injuries to Mr. van Leeuwen to corroborate his story. *Id.* Police therefore placed Mr. van Leeuwen under arrest for domestic battery in the third degree. He was processed into the Boone County Detention Center and released on bond roughly forty-five minutes later. (Doc. 42-2, p. 16). The charge against him was *nol prossed* by the prosecutor, and Mr. van Leeuwen never stood trial for the offense. (Doc. 42-9, p. 1).

Mr. van Leeuwen filed suit in this Court pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Fourth Amendment rights . He argues that the Boone County officers arrested him without probable cause and outside of their jurisdiction.[3]

---

[3] Mr. van Leeuwen also claims in his Response to Defendants' Motion for Summary Judgment (Doc. 45) that he was unlawfully intimidated by police prior to his arrest. Though being arrested can be a frightening and sobering experience, feeling intimidated by law enforcement does not amount to a constitutional violation. Mr. van Leeuwen also asserts that certain federal and state rules of criminal procedure were violated by

3

Before the Court begins its discussion, it bears mentioning that Mr. van Leeuwen's Amended Complaint betrays a profound lack of knowledge of the legal requirements supporting the doctrine of probable cause. He claims:

> [I]t is clear the deputies were not interested in investigating a possible incident but only interested in making an arrest because the country at the time was obsessed with the "#MeToo" movement, and thereby failed to observe the normal standards required of deputies to perform their duty under the law. Ana had an injury; therefore, they <u>assumed</u> her husband must be guilty. The law is not based on assumptions but on actual facts and evidence to convict!

(Doc. 26, ¶ 7 (emphasis in original)). Certainly, Mr. van Leeuwen disputes that he actually committed a crime; however, as the Court's discussion will explain, that dispute has no bearing on the legal question of whether there was probable cause to support his arrest.

## II. LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. When no material facts are in dispute, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.

---

Defendants, but he fails to explain how these alleged violations affect his constitutional rights. Moreover, the federal and state rules he cites relate to either pre-trial detention or the state's discovery obligations before trial, and here, Mr. van Leeuwen was not confined to a detention facility before trial, and his charge of domestic battery was *nol prossed*. Therefore, the Court's discussion will only focus on Mr. van Leeuwen's Fourth Amendment claims.

1978). Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. DISCUSSION

#### A. Probable Cause

##### 1. Individual Capacity

It is unclear from the face of the Amended Complaint whether Mr. van Leeuwen asserts claims against each Defendant in his individual capacity or against them in their official capacities. The Court notes that if a complaint is silent about the capacity in which the plaintiff is suing a defendant, it must interpret the complaint as alleging only official-capacity claims. *Gingras v. Wood*, 294 F. App'x 241, 241–42 (8th Cir. 2008). However, even if the Court construed Mr. van Leeuwen's Amended Complaint to state individual-capacity claims, they would be subject to dismissal.

"In section 1983 actions against public officials in their individual capacity, a plaintiff must show that the defendant violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

5

(1982)).  In this case, this means that Mr. van Leeuwen must demonstrate that the officers violated his Fourth Amendment rights by arresting him without probable cause.

"An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense."  *Royster v. Nichols*, 698 F.3d 681, 688 (8th Cir. 2012).  The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  One does not have to be guilty of an offense for there to exist probable cause for officers to lawfully arrest that individual.  "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the probable-cause decision."  *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).  "Probable cause . . . is not a high bar:  It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act."  *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

In view of the undisputed facts, it is clear that there was probable cause to arrest Mr. van Leeuwen for the crime of domestic battery in the third degree.  Prior to arriving at Mr. van Leeuwen's house, police were told by Mrs. van Leeuwen that he had pushed her off the bed and caused her to injure her shoulder.  This was corroborated by the fact that the officers were aware that she had gone to the hospital, and at the time of the encounter, her arm was in a sling.  Mrs. van Leeuwen also told the officers that her husband had hurt her before and that she was seeking police intervention now because she was afraid of him.  Though Mr. van Leeuwen disputed his wife's story, he had no evidence to

6

corroborate his version of events. The Court finds there was at least a fair probability that an arresting officer at the scene would reasonably believe that Mr. van Leeuwen committed domestic battery in the third degree. Because there was probable cause to arrest Mr. van Leeuwen without a warrant, his constitutional rights were not violated, and any individual-capacity claims he may have asserted against Defendants must be **DISMISSED**.

### 2. Official Capacity

To plead an official capacity claim under § 1983, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Here, because the Court finds that there was probable cause to arrest Mr. van Leeuwen, there was no actionable injury. Therefore, his official-capacity claims must be **DISMISSED**.

### B. Jurisdiction

Mr. van Leeuwen also claims that Boone County officers were without jurisdiction when they arrested him in his Marion County home, in alleged violation of Arkansas Code § 14-15-501. However, "[a] police violation of state law does not establish a Fourth Amendment violation." *United States v. Baker*, 16 F.3d 854, 856 n.1 (8th Cir. 1994). This means that even if Defendants were outside their jurisdiction when they arrested Mr. van Leeuwen, they did not violate his Fourth Amendment rights.

Even were this not the case, government agents acting in the scope of their employment are protected by qualified immunity, by which they "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 801 (1982).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).  In order to overcome the protection afforded by qualified immunity, the plaintiff must put forth "sufficient evidence to find a violation of a Constitutional right, . . . and raise a genuine issue of material fact about whether reasonable officers would have known their conduct would have violated this clearly established right."  *Hill v. Scott*, 349 F.3d 1068, 1071 (8th Cir. 2003).

As established above, a violation of state law (in this case, the statute regarding jurisdiction) does not amount to a constitutional violation.  In addition, Mr. van Leeuwen has not put forth sufficient evidence to demonstrate that reasonable officers in the Defendants' position would have known that they were outside of Boone County when the arrest took place.  Mr. van Leeuwen admits he did not tell the arresting officers he was a Marion Country resident at the time of the arrest.  (Doc. 45, p. 9).  He did not inform officers of his county of residence until he was being booked at the Boone County Detention Facility.  (Doc. 26, ¶ 3(d)).  The van Leeuwens also called on the Boone County Sheriff's Department several times over the past ten years to attend to disputes at their home.  On the day of the arrest, Mrs. van Leeuwen met with the officers at the community center in Boone County; she personally led the officers to her home; her mailing address was in Boone County; and at least part of the van Leeuwens' property is located in Boone County.  Therefore, the Court finds that even if Defendants were mistaken about whether

the crime took place in Boone County, they are entitled to qualified immunity for that reasonable mistake.

## IV. CONCLUSION

In light of the foregoing analysis, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 31) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. 41) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE** with a separate judgment to follow.

**IT IS SO ORDERED** on this 22nd day of March, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE